UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| STEPHANIE BAXTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-01725-JRS-DML |
| | ) | |
| CARITE CORPORATE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**Order on Defendant's Motion for Summary Judgment**

Plaintiff Stephanie Baxter alleges claims of employment discrimination against her former employer, Defendant CARite Corporate, LLC. Specifically, Baxter alleges both hostile work environment and retaliation claims under the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a) *et seq.* CARite Corporate moves for summary judgment. (ECF No. 92.) CARite's motion is **granted** for the reasons stated below.

**I. Background**

CARite Corporate ("CARite") buys used cars, repairs any defects, and resells them at its twenty-five dealership locations. (ECF No. 92-1 at 1.) CARite provides new employees with its Employee Handbook, and the handbook's *No Harassment* policy is set forth in the handbook. (ECF No. 92-1 at 5–6.) The handbook also outlines specific procedures for reporting harassment: a CARite employee must immediately report instances of harassment to CARite Human Resources personnel or Jeannie Fledderjohn, Chief Administrative Officer. (*Id.*)

Plaintiff Stephanie Baxter acknowledged receipt of the Employee Handbook, (ECF No. 92-1 at 9), and began her employment at CARite on December 20, 2016. (Baxter Dep. 25:17–26:1, ECF No. 92-2 at 13.) Baxter was hired as a sales guide at CARite's Muncie, Indiana, dealership and reported to Jennifer Osborne, the direct supervisor of the sales team. (Osborne Dep. 34:5–34:25, ECF No. 92-5 at 14.) Osborne reported to Marshall Morris, the regional store leader. Morris had supervisory responsibility over the Muncie and Indianapolis locations and hired both Osborn and Baxter. (ECF No. 92-4 at 2.)

Baxter's job consisted of selling cars by leads generated by phone, internet, or walk-in business. (ECF No. 92-2 at 29.) For a time, Baxter was the only sales guide and she received all leads. (ECF No. 92-2 at 16.) Baxter's desk was even positioned at the front of the office to assist her in viewing customers in the front and side lots. (ECF No. 92-2 at 26.) Once additional sales guides were hired, Osborne divided leads between them.

Baxter began displaying issues with tardiness shortly after being hired. On January 11, 2017, Morris issued Baxter a warning for repeatedly showing up late to work. (ECF No. 92-4 at 2.) Around the same time, a CARite car detailer, Randy Dryer, began to sexually harass her. (Baxter Dep. 88:14–88:17, ECF No. 92-2 at 69.) Dryer made daily comments about Baxter "looking good." (Baxter Dep. 92:16–94:4, ECF No. 92-2 at 73.) At first, Baxter took these comments as compliments. However, after a few weeks, Dryer's comments began to make Baxter feel more and more uncomfortable. Around the end of January 2017, Dryer stated that Baxter's breasts

were "homegrown." (*Id.*) Baxter alleges that Dryer continued to make inappropriate comments to her for weeks. For example, Dryer stated that all women were "fat, lazy b****es."

In addition to Dryer's frequent comments, Dryer once walked by Baxter's desk and put his index and middle fingers to his mouth in the shape of a "V" while flicking his tongue up and down toward her. (Baxter Dep. 86:11–86:17, ECF No. 92-2 at 67.) Osborne witnessed the gesture and reported it, by e-mail, to Morris. (Osborne Dep. 60:16–60:25, ECF No. 92-5 at 31.)

Baxter did not report any of Dryer's comments to CARite Human Resources. However, she did report the alleged harassment to Osborne, her supervisor, on numerous occasions. (Baxter Dep. 102:12–103:18, ECF No. 92-2 at 83–84.) In turn, Osborne reported some of the instances to Morris, her supervisor. Yet, Osborn and Morris did not report any of Baxter's claims of harassment to the appropriate personnel. After Dryer made the "V" gesture to Baxter, Morris had a talk with Dryer and told him to stay away from Baxter. (Morris Dep. 54:16–55:9, ECF No. 92-3 at 26–27.) In February, Dryer followed Baxter into the bathroom and told her he could show her "how a real man f***s." (Baxter Dep. 117:5–118:11, ECF 92-2 No. at 96.) It was Dryer's last act of harassment alleged, and Baxter reported the incident to Osborne.

On March 28, 2017, Baxter did not show up for work, and Osborn could not get in touch with her. On March 29, Tim Duncan, Baxter's boyfriend, called the Muncie location and explained that Baxter's absence was due to her hospitalization. (ECF

No. 92-5 at 76.) Osborne reported this news to CARite Human Resource Generalist Nina MacMillan (formerly Nina Stabile). MacMillan called Baxter and requested that she bring a doctor's note with her upon her return to work. Baxter explained that she "spiraled out of control" and would soon return to work. (ECF No. 92-8 at 14–15.). During Baxter's absence, Osborne moved Lindsey Dryer, another Sales Guide and the daughter of Randy Dryer, to Baxter's desk at the front of the office.

On April 4, Baxter returned to work with a doctor's note diagnosing her with a urinary tract infection. Baxter became visibly upset when she saw Lindsey Dryer sitting at her desk and complained about the situation to Osborne and Morris, stating that the situation was "bull****." (Baxter Dep. 80:3–80:4, ECF No. 92-2 at 61.) Morris sent Baxter home for disrupting the workplace. Baxter then called CARite Human Resources and reported the situation to MacMillan. During this conversation, Baxter reported the prior instances of alleged sexual harassment. (ECF No. 92-2 at 110.)

Jeannie Fledderjohn, CARite's Chief Administrative Officer, immediately contacted Osborne and Morris to discuss Baxter's allegations. During that ensuing conference call with Osborne, Morris, and MacMillan on April 4, 2017, Baxter's multiple instances of tardiness and performance issues were brought to the attention of Fledderjohn. (MacMillan Dep. 28:13–29:20, ECF No. 92-8 at 16.) Morris and Osborne also stated that Baxter should be fired due to her absences and tardiness, and because she was a liability. (ECF No. 92-3 at 51; ECF No. 92-6 at 35; ECF No. 100-2 at 59.) However, Fledderjohn explained that further coaching and

4

documentation was required before they could discuss termination. (Fledderjohn Dep. 103:6–104:7, ECF No. 92-6 at 49–50.) Additionally, Fledderjohn brought up the instance of Dryer's crude "V" gesture, and Morris and Osborne confirmed that the incident did indeed take place. Fledderjohn was also made aware of another altercation between Baxter and Dryer that occurred in January; Baxter parked a vehicle in an incorrect parking spot, and Dryer yelled at Baxter for doing so. (ECF No. 92-5 at 44.) Once Morris disconnected from the conference call, Osborne again confirmed that she witnessed the "V" gesture incident and that she, at that time, had reported it to Morris. Fledderjohn planned to visit the Muncie location to formally interview Baxter, Osborne, and Dryer.

On April 6, 2017, a shift of positions occurred at CARite's Muncie and Indianapolis locations. Tom Burns, Vice President of Retail Operations, informed Morris that he was to relinquish his store leader responsibilities from the Muncie location to focus solely on the Indianapolis location. (ECF No. 92-9 at 2.) Additionally, Osborne was given responsibility over the Muncie location, which included the right to terminate. (ECF No. 92-2 at 41.) Positions continued to shift. On April 13, 2017, Dryer and his daughter Lindsey got into an argument in the CARite parking lot, which led to Dryer voluntarily resigning. (ECF No. 92-2 at 71.) Furthermore, on April 17, 2017, Burns terminated Osborne's employment for substandard performance. (ECF No. 92-9 at 5.)

Burns then assigned Jonathan Keblesh to be the temporary Store Leader and Charles Welch to be the interim Assistant Store Leader at the Muncie location. (ECF

No. 92-9 at 3.) Baxter continued to have tardiness issues. (Baxter Dep. 47:20–47:24, ECF No. 92-2 at 33.) During this time, Baxter also claimed that she did not receive leads. (*Id.*) On May 25, 2017, Baxter showed up an hour late to work. During her absence, there were no sales guides covering the Muncie location. This led Welch to contact Burns about terminating Baxter's employment. Subsequently, Welch terminated Baxter's employment at CARite on June 7, 2017. (ECF No. 92-1 at 10.)

## II. Summary Judgment Standard

"A district court properly grants summary judgment where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Giles v. Godinez*, 914 F.3d 1040, 1048 (7th Cir. 2019). In considering a motion for summary judgment, the district court "must construe all the facts and reasonable inferences in the light most favorable to the nonmoving party." *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017). However, the district court must also view the evidence "through the prism of the substantive evidentiary burden," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986), and does not draw "inferences that are supported by only speculation or conjecture," *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010).

## III. Discussion

*A. Baxter's Hostile Work Environment Claim*

To prevail on a hostile work environment claim under Title VII, a plaintiff must present evidence that "(1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected

class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016).

Where, as here, the alleged harasser is a fellow employee, not a supervisor, the plaintiff must prove that the employer was "negligent either in discovering or remedying the harassment." *Jajeh v. Cnty. of Cook*, 678 F.3d 560, 569 (7th Cir. 2012). An employer must adequately respond to the alleged harassment in a timely manner. *Sutherland v. Wal-mart Stores, Inc.*, 632 F.3d 990, 994 (7th Cir. 2011). However, an employer's "notice or knowledge is a prerequisite for liability." *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1014 (7th Cir. 1997). Here, it is undisputed that Baxter reported multiple instances of Dryer's alleged harassment to her direct supervisor, Osborne. And Osborne witnessed Dryer's obscene "V" gesture and reported it to Morris. At issue is whether Baxter's reporting to Osborne and Morris put CARite on notice of the alleged harassment.

It must first be determined whether CARite had a designated channel to report harassment complaints. *Younger v. Bayer Corp.*, 123 F.3d 672, 674 (7th Cir. 1997). "Where an employer sets up a point person to accept complaints, this person becomes the natural channel for the making and forwarding of complaints, and complainants can be expected to utilize it in the normal case." *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1035 (7th Cir. 1998). A claim cannot survive summary judgment without evidence that the employer received sufficient notice to believe that sexual

7

harassment was probably occurring. *Zimmerman v. Cook Cnty. Sheriff's Dep't*, 96 F.3d 1017, 1019 (7th Cir. 1998).

Here, CARite did designate a channel for reporting harassment complaints. In CARite's Employee Handbook, the *No Harassment* policy outlines specific procedures for reporting harassment, one of which is that all instances of harassment must be immediately reported. (ECF No. 92-1 at 5–6.) Additionally, CARite's *No Harassment* policy designates where to send complaints: employees must report their concerns to CARite's Human Resources Department or Jeannie Fledderjohn, CARite's Chief Administrative Officer.

Baxter did not report any instances of alleged harassment to Human Resources or Jeannie Fledderjohn until April 4, 2017. (ECF No. 92-2 at 110.) Baxter, however, claims that CARite had constructive notice once the "V" gesture was reported to Morris. "Generally, for constructive notice to attach, the notice must come to the attention of someone who . . . has under the terms of his employment . . . a duty to pass on the information to someone within the company who has the power to do something." *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 931 (7th Cir. 2017) (quoting *Young v. Bayer Corp.*, 123 F.3d 672, 674 (7th Cir. 1997).

In *Nischan,* the plaintiff was sexually assaulted in a work trailer. *Id.* at 932. Distraught, she immediately exited the work trailer and reported the incident to a project supervisor. *Id.* The company handbook required "[a]ny employee with managerial or supervisory responsibility" to immediately report known instances of sexual harassment. *Id.* The project supervisor failed to report the incident. *Id.* The

8

*Nischan* court held that the company had constructive notice because the company handbook specifically mandated supervisors to report instances of sexual harassment, which the project supervisor did not. *Id.* at 933. Here, unlike the company handbook in *Nischan*, CARite's Employee Handbook does not specifically mandate supervisors to report instances of alleged sexual harassment. Instead, the CARite handbook provides a blanket statement of "any employee" rather than the specific language in the Nischan handbook of "any employee with managerial or supervisory responsibility." (*Id.* at 932.) The CARite handbook outlines that:

> Any employee who experiences or observes harassment, discrimination, or retaliation should report it using the steps listed below. If you have any concern that our No Harassment policy may have been violated by anyone, you must immediately report the matter. Due to the very serious nature of harassment, discrimination and retaliation, you must report your concerns to one of the individuals listed below: Human Resources personnel . . . [or] Jeannie Fledderjohn.

(ECF No. 92-1 at 5–6.) Thus, Baxter and Osborne were required but failed to report the "V" incident to the appropriate personnel as outlined in the handbook. Once Morris was notified about the "V" incident, he spoke with Baxter to ask about the incident. Baxter stated that she did not want any reports filed. (ECF No. 54 at 26.) Regardless of Baxter's reasoning for not reporting it, she understood that she was required to report it to HR. CARite was not charged with constructive notice because Baxter, Osborne, and Morris each failed to report the incident to the appropriate personnel, and because Baxter did not want to report the issue when she spoke with Morris.

For four months, Baxter failed to report harassment to the mandated personnel. This amount of time has been found unreasonable. *See, e.g.*, *Hunt v. Wal-Mart Stores*, 931 F.3d 624, 631 (7th Cir. 2019) (finding it unreasonable for an employee to wait four months before reporting sexual harassment to employer); *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 432 (7th Cir. 1995) (finding that plaintiff's failure to report harassment to human resources as outlined by the company manual precluded company from having notice to respond); *see also Gawley v. Ind. Univ.*, 276 F.3d 301, 312 (7th Cir. 2001) (holding that waiting seven months to report harassment through the appropriate channels was unreasonable).

Once Baxter reported Dryer's conduct to MacMillan, Fledderjohn was notified and immediately acted. "Once aware of workplace harassment, the employer can avoid liability for its employees' harassment if it takes prompt and appropriate corrective action reasonably likely to prevent harassment from recurring." *Vance v. Ball State Univ.*, 646 F.3d 461, 471 (7th Cir. 2011) (citation and internal quotation mark omitted). Fledderjohn conducted a conference call with Osborne, Morris, and MacMillan to discuss the reported incidents.

Subsequently, Fledderjohn conducted another call with Osborne and MacMillan to clarify the conduct. During that call, Fledderjohn also reminded Osborne of her role as a supervisor and of her options in the event Dryer displayed any similar conduct toward Baxter, which included terminating Dryer. (ECF No. 92-6 at 42–43.) Fledderjohn also planned to visit the Muncie location to interview Osborne, Baxter, and Dryer. A "stoppage of harassment" is a factor that shows

effectiveness of employer response, *Porter v. Erie Foods Int'l., Inc.*, 576 F.3d 629, 637 (7th Cir. 2009), and no alleged instances of harassment occurred after the conclusion of the calls. Furthermore, on April 13, 2017, Dryer resigned from CARite. Taking the facts in the light most favorable to Baxter, no reasonable jury could find negligence on the part of CARite.

## B. Baxter's Retaliation Claim

To prevail on a Title VII retaliation claim, a plaintiff must "present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 566 (7th Cir. 2019) (quoting *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016)). Retaliation claims "require traditional but-for causation, not a lesser 'motivating factor' standard of causation." *Reynolds v. Tangherlini*, 737 F.3d 1093, 1104 (7th Cir. 2013) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013)). Here, "the appropriate question on summary judgment is simply: could a reasonable jury find based on *all* available evidence that a . . . retaliatory motive caused [Baxter's] termination?" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 569 (7th Cir. 2017). CARite answers no. Baxter, however, claims that CARite decided to terminate her employment during the April 2017 conference call, (*see supra*), between Fledderjohn, Osborne, Morris, and MacMillan, in retaliation for her complaining about sexual harassment and a hostile work environment.

CARite concedes that Baxter engaged in protected activity when she reported allegations of sexual harassment by Dryer. CARite also concedes that Baxter's discharge was an adverse action. At issue is causation.

To prove causation, a "plaintiff must establish that defendant possessed the requisite state of mind" rather than a mere "sequential connection." *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 393 (7th Cir. 1999). The causation prong is rarely met by merely establishing a temporal connection between the protected activity and the alleged retaliatory action. *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018). Baxter argues that the decision to terminate her employment was made during the April 4, 2017, conference call between Fledderjohn, Morris, MacMillan, and Osborne. While it is true that the call was in response to Baxter's complaint to human resources, her complaint was not the only issue discussed during the call. In fact, Baxter's tardiness and performance issues were also discussed. Osborne and Morris felt that Baxter should be terminated because of Baxter's performance; yet, Fledderjohn specifically stated that more coaching and documentation needed to take place before termination could be considered. (ECF 92-2 at 49–50.)

Although termination was indeed mentioned, there is no indication that the decision to terminate Baxter was made during the April 4 conference call. But even if it was true that Fledderjohn, Osborne, Morris, and MacMillan, decided during the call to terminate Baxter, none of them had any influence over Baxter's termination on June 7, 2017. Morris was transferred to the Indianapolis location on April 6, Osborne was terminated on April 17, and Keblesh and Welch took over managerial

roles of the Muncie location shortly after Osborne's termination from CARite. Moreover, Fledderjohn and MacMillan had nothing to do with Baxter's termination, because Welsh got approval from Thomas Burns, CARite's Vice President of Retail Operations, to terminate Baxter. (*See infra*.)

Even if analyzed under the "cat's paw" theory, Baxter's argument fails. The theory "refers to a situation in which an employee is fired . . . by a supervisor who himself has no discriminatory motive, but who has been manipulated by a subordinate who does have such a motive and intended to bring about the adverse employment action." *Cook v. IPC Int'l Corp.*, 673 F.3d 625, 628 (7th Cir. 2012). Here, the suggestion is that Morris influenced Welch to terminate Baxter's employment. This fails for two reasons. First, Morris was not a subordinate of Welch. Morris was the Store Leader of the Indianapolis location and Welch was the acting Assistant Store Leader of the Muncie location. Second, at the time of Baxter's termination, Morris had no authority to terminate her nor influence the decision of Welch to do so.

Burns gave Welch approval to terminate Baxter. After Baxter arrived late to work, leaving the sales floor empty on May 25, 2017, Welch contacted Burns to get approval to terminate Baxter for her attendance issues. Morris did not learn of Baxter's termination until after it occurred. Drawing all reasonable inferences in Baxter's favor, she fails to meet the burden of proof required to apply the "cat's paw" theory.

Baxter fails to provide any direct evidence that her termination from CARite was decided during the April 4 conference call, which means that Baxter "must rely on

13

circumstantial evidence like suspicious timing, ambiguous statements, treatment of similarly-situated employees, and any other relevant information that could permit an inference of retaliation." *Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 697 (7th Cir. 2017). Baxter claims that CARite's official reason for terminating her was for substandard work, the reason stated on her termination paperwork, (ECF 100-1 at 111), while CARite's proffered reason for terminating her was for attendance issues. It is unclear why attendance is not a subset, indeed a symptom of substandard work in this case. Notwithstanding there may not be a discrepancy in the reasons, at this stage, the question is whether any discrepancy between the reason provided on Baxter's termination paperwork and CARite's proffered reason of terminating Baxter for attendance issues was pretext for retaliation.

To establish pretext, Baxter must "identify such weaknesses, implausibilities [sic], inconsistencies, or contradictions in [CARite's] proffered reasons that a reasonable person could find them worthy of credence." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007). Baxter loses if CARite honestly believed the reason it offered to terminate Baxter, even if the reason was inaccurate or unfair. *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 380 (7th Cir. 2020). CARite claims that it terminated Baxter for attendance issues; this reason is not pretext for retaliation as borne out by the undisputed facts.

Baxter displayed a pattern of attendance issues during her employment with CARite. As early as January 11, 2017, she received a warning for being late to work. Additionally, Baxter missed work from March 28 to April 4, 2017, because she

14

"spiraled out of control." Moreover, Baxter continued to have attendance issues even after Dryer, Morris, and Osborne were no longer at the Muncie location. Indeed, Baxter arrived an hour late to work on March 25, 2017, leaving the Muncie location with no sales guides to take in business, which Welch reported to Burns. A reasonable person would find CARite's reason for terminating Baxter—that she had attendance issues—worthy of credence based on the facts viewed in a light most favorable to Baxter.

Baxter fails to provide any additional circumstantial evidence. On this record, a reasonable jury could not conclude that Baxter's sexual harassment complaint to CARite Human Resources caused her termination.

## IV. Evidentiary Matters

CARite objects that multiple statements in Baxter's affidavits, exhibits, and declarations are inadmissible hearsay. (ECF No. 106.) The challenged statements do not alter the summary-judgment outcome. CARite's objections are overruled as moot.

## V. Conclusion

For the reasons set forth above, CARite Corporate's motion for summary judgment is **granted**.

**SO ORDERED.**

Date: 8/31/2020

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

15

Distribution:

Douglas Jennings Hill
HILL KNOTTS & GOLDMAN, LLC
dhill@hkglaw.net

Theresa Renee Parish
OGLETREE DEAKINS NASH SMOAK & STEWART, P.C. (Indianapolis)
theresa.parish@odnss.com

Scott James Preston
OGLETREE DEAKINS NASH SMOAK & STEWART, P.C. (Indianapolis)
Scott.Preston@ogletreedeakins.com

Ronald E. Weldy
WELDY LAW
rweldy@weldylegal.com